UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CAMPAIGN LEGAL CENTER, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>FEDERAL ELECTION COMMISSION,<br><br>Defendant. | Civil Action No. 16-752 (JDB) |

## MEMORANDUM OPINION

Plaintiffs, Campaign Legal Center and Democracy 21, bring this action to challenge the Federal Election Commission's dismissal of five administrative complaints that plaintiffs filed before the agency. Those complaints alleged that various individuals and corporate entities had violated the Federal Election Campaign Act's disclosure provisions—particularly, its prohibition on making contributions "in the name of another," see 52 U.S.C. § 30122, and its requirement that "political committees" file publicly available reports detailing their receipts and expenditures, id. § 30104(a)–(b). Before this Court, plaintiffs contend that the Commission's dismissal was contrary to law and denied them information to which they are entitled under the Act. Unpersuaded, the Commission has moved to dismiss for lack of standing, arguing that plaintiffs have not adequately alleged an informational injury because they already possess all the information they claim to seek in this action. The Commission is correct as to some of plaintiffs' claims, but not correct as to others. Therefore, its motion to dismiss will be granted only in part.

## BACKGROUND

Campaign Legal Center and Democracy 21 are both non-partisan, non-profit organizations that aim to support, implement, and defend campaign finance laws. See Compl. [ECF No. 1] ¶¶ 10, 14. To advance their cause, both groups engage in a wide variety of campaign-finance

1

related activities. Campaign Legal Center provides information to voters about who is funding political communications, so that they might better "evaluate the full context of the message" being conveyed. Ryan Decl. [ECF No. 18-1] ¶ 9; see also id. ¶¶ 8–15. It also participates in litigation concerning the legality of various campaign-finance laws, id. ¶¶ 16–21, files administrative complaints and participates in agency rulemaking proceedings, see Compl. ¶ 10, and participates in the legislative process, sometimes by providing expert testimony or drafting reform proposals, see Ryan Decl. ¶¶ 28–32. Democracy 21 is engaged in similar activities. See Wertheimer Decl. [ECF No. 18-2] ¶ 2; see also id. ¶ 3 (discussing Democracy 21's "Political Money Report, which is distributed to the media and to interested individuals and groups"). According to plaintiffs, campaign-finance information disclosed pursuant to the Act is an important resource in all these areas. See, e.g., Compl. ¶ 16. When that information is not available, plaintiffs contend that they are obstructed "from carrying out a central part of their mission." Id.

The Federal Election Campaign Act "seeks to remedy any actual or perceived corruption of the political process through contribution and expenditure limitations as well as recordkeeping and disclosure requirements." Citizens for Responsibility & Ethics in Wash. v. FEC, 799 F. Supp. 2d 78, 79 (D.D.C. 2011) ("CREW (2011)"). "In particular, the Act imposes extensive recordkeeping and disclosure requirements upon groups that fall within the Act's definition of a 'political committee.'" FEC v. Akins, 524 U.S. 11, 14 (1998); see 52 U.S.C. § 30101(4) (definition of political committee); id. § 30104(b) (reports filed by political committees must include lists of donors who give more than $200 per year, contributions, expenditures, and other disbursements). In the same subchapter, the Act decrees that "[n]o person shall make a contribution in the name of another person," "knowingly permit his name to be used to effect such a contribution," or "knowingly accept a contribution made by one person in the name of another person." Id. § 30122.

The Congressional purpose behind that prohibition is "to ensure the complete and accurate disclosure of the contributors who finance federal elections." United States v. O'Donnell, 608 F.3d 546, 553 (9th Cir. 2010).

Plaintiffs' five administrative complaints alleged violations of these disclosure provisions. See 52 U.S.C. § 30109(a)(1) (permitting "[a]ny person" to file a complaint with the Commission alleging a violation of the Act). Each alleged that various individuals had made political contributions to super PACs using limited liability companies and other corporate entities as "straw donors," thereby concealing the true source of the contributions from public disclosure. And each complaint alleged that the individual "true donor" and the corporate "straw donor" had violated the Act's prohibition on contributions in the name of another—the individual, by using the entities' name; the entity, by allowing its name to be used. See Compl. ¶ 2. In four of the five complaints, it was alleged that the "straw donors" had violated the Act by failing to register and file reports as "political committees." Id.

After receiving a complaint, the Commission proceeds with an investigation only if four of its six members find "reason to believe" that the Act has been violated; otherwise, the complaint is dismissed. See 52 U.S.C. § 30109(a)(2). Here, after considering reports and recommendations prepared by the Commission's Office of General Counsel, three Commissioners concluded that all five complaints should be dismissed, so they were dismissed without further investigation. Compl. ¶¶ 3–4. Plaintiffs then filed this action under 52 U.S.C. § 30109(a)(8)(A), which provides a cause of action for "[a]ny party aggrieved by an order of the Commission dismissing a complaint filed by such party" under the Act. Their complaint here alleges that the Commission's decision dismissing their administrative complaints is arbitrary, capricious, an abuse of discretion, and otherwise contrary to law. Compl. ¶ 4 (citing Orloski v. FEC, 795 F.2d 156, 161 (D.C. Cir. 1986)).

The Commission has now moved to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1), asserting that this Court lacks subject-matter jurisdiction because plaintiffs have not suffered an injury in fact as required for Article III standing. See Def.'s Mot. to Dismiss [ECF No. 13]. Plaintiffs, of course, disagree. As they see it, the Commission's action has deprived them of information to which they are entitled under the Act, thereby subjecting them to an informational injury. See, e.g., Pls.' Opp'n [ECF No. 18] at 4. Alternatively (but relatedly), plaintiffs assert that they have organizational standing based on the adverse effect that the Commission's decision has had on their organizational interests. See id. at 15–28.

## **LEGAL STANDARD**

Article III limits Congress' grant of judicial power to "cases" or "controversies," and the doctrine of standing is rooted in that limitation. Akins, 524 U.S. at 20. The "irreducible constitutional minimum" of standing contains three elements. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992). "The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1547 (2016) (citing Lujan, 504 U.S. at 560–61). The Commission's motion focuses primarily (perhaps exclusively) on the first of these elements: whether plaintiffs have suffered an injury in fact. "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" Id. at 1548 (quoting Lujan, 504 U.S. at 560).

As the party invoking federal jurisdiction, plaintiffs bear the burden of establishing standing, using "the manner and degree of evidence required at the successive stages of the litigation," Lujan, 504 U.S. at 561. Here, at the pleading stage, the Court will accept as true the well-pleaded factual allegations in plaintiffs' complaint, draw all favorable inferences from those

4

allegations in plaintiffs' favor, and ask whether they have stated a claim of standing that is plausible on its face. Arpaio v. Obama, 797 F.3d 11, 19 (D.C. Cir. 2015). The Court will also consider the declarations plaintiffs have submitted in support of their standing, see id., and the publicly available Commission documents that plaintiffs have cited in their opposition,[1] see EEOC v. St. Francis Xavier Parochial Sch., 117 F.3d 621, 624–25 (D.C. Cir. 1997) (in resolving motion to dismiss, court may consider matters of which it may take judicial notice); Pharm. Research & Mfrs. of Am. v. Dep't of Health & Human Servs., 43 F. Supp. 3d 28, 33 (D.D.C. 2014) (court may take judicial notice of information posted on official public websites of government agencies); Kretchmar v. FBI, 32 F. Supp. 3d 49, 55 (D.D.C. 2014) (court may take judicial notice of agency decisions contained in the administrative record).

## DISCUSSION

The Supreme Court explained in Akins that a plaintiff "suffers an 'injury in fact' when the plaintiff fails to obtain information which must be publicly disclosed pursuant to a statute." 524 U.S. at 21; see also Pub. Citizen v. Dep't of Justice, 491 U.S. 440, 449 (1989) (holding that a failure to obtain information subject to disclosure under the Federal Advisory Committee Act "constitutes a sufficiently distinct injury to provide standing to sue"). "[T]he existence and scope of an injury for informational standing purposes is defined by Congress: a plaintiff seeking to demonstrate that it has informational standing generally 'need not allege any additional harm beyond the one Congress has identified.'" Friends of Animals v. Jewel, 828 F.3d 989, 992 (D.C. Cir. 2016) ("Friends of Animals II") (quoting Spokeo, 136 S. Ct. at 1549).

---

[1] The Commission has filed a motion seeking permission to postpone its obligations to assemble the administrative record and file a certified list of the record's contents, pending resolution of its motion to dismiss. But some of these materials are available online, and have been cited—with hyperlinks—by plaintiffs in their opposition. See Pls.' Opp'n at 1 n.2 (http://eqs.fec.gov/eqs/searcheqs).

In Akins, plaintiffs were a group of voters who disagreed with the Commission's determination that the American Israel Public Affairs Committee, or AIPAC, was not a "political committee" subject to the Act's recordkeeping and reporting requirements. Akins, 524 U.S. at 15–16. According to the Supreme Court, the "injury in fact" these voters suffered consisted of "their inability to obtain information—lists of AIPAC donors (who are, according to AIPAC, its members), and campaign-related contributions and expenditures—that, on [plaintiffs'] view of the law, the statute requires that AIPAC make public." Id. at 21. Following Akins, the D.C. Circuit "has recognized that a denial of access to information can work an injury in fact for standing purposes, at least where a statute (on the claimants' reading) requires that the information be publicly disclosed and there is no reason to doubt their claim that the information would help them." Friends of Animals v. Jewell, 824 F.3d 1033, 1040–41 (D.C. Cir. 2016) ("Friends of Animals I") (internal quotation marks omitted); see also Am. Soc. for the Prevention of Cruelty to Animals v. Feld Entm't, Inc., 659 F.3d 13, 22 (D.C. Cir. 2011) (discussing this standard); Ethyl Corp v. EPA, 306 F.3d 1144, 1148 (D.C. Cir. 2002) (similar).

"[T]he nature of the information allegedly withheld is critical to the standing analysis." Common Cause v. FEC, 108 F.3d 413, 417 (D.C. Cir. 1997). For example, a plaintiff does not suffer an injury in fact if it seeks only information that the applicable statute does not require to be disclosed. See CREW v. FEC, 401 F. Supp. 2d 115, 121 n.2 (D.D.C. 2005) aff'd, 475 F.3d 337 (D.C. Cir. 2007) ("CREW (2007)") (plaintiffs seeking precise value of master contact list lacked informational standing in part because the Act "does not require the FEC to value an in-kind contribution in the form of a contact list"); Alliance for Democracy v. FEC, 362 F. Supp. 2d 138, 145 (D.D.C. 2005) ("requiring the FEC to quantify the value of the [mailing] list would place an obligation on the FEC beyond what is required by the [Act]"). Nor will plaintiffs have standing

6

merely to seek a legal determination based on factual information that is already publicly available. See Wertheimer v. FEC, 268 F.3d 1070, 1074–75 (D.C. Cir. 2001) (no informational standing to pursue a legal determination that expenditures were "coordinated" when all relevant expenditures had been publicly disclosed); Vroom v. FEC, 951 F. Supp. 2d 175, 178–79 (D.D.C. 2013) (no informational standing to pursue legal determination that publicly reported expenditures exceeded applicable limitations); CREW (2011), 799 F. Supp. 2d at 88–89 (no informational standing to pursue legal determination that publicly reported expenditures were "in-kind contributions"). In other words, a plaintiff has no legally cognizable interest in learning solely "whether a violation of the law has occurred," Common Cause, 108 F.3d at 418, or in having the Commission "get the bad guys," Nader v. FEC, 725 F.3d 226, 230 (D.C. Cir. 2013) (internal quotation marks omitted).

Here, plaintiffs allege that they have been denied access to complete and accurate information concerning the campaign contributions identified in their administrative complaints. See Pls.' Opp'n at 14–15. The Commission, on the other hand, contends that plaintiffs already possess all the relevant information about those contributions and, under the precedent discussed above, have therefore suffered no injury in fact as a result of the Commission's dismissal. See Def.'s Mot. to Dismiss at 8–9.

The Commission is correct about two of plaintiffs' administrative complaints. The first complaint alleged that Edward Conrad, a former business-partner and friend of presidential candidate Mitt Romney, had used an entity called W Spann LLC to hide the true source of his $1 million contribution to Restore Our Future, a super PAC that supported Romney in the 2012 presidential election. See Compl. ¶¶ 30–31. As plaintiffs acknowledge, however, Conrad has since admitted that he formed W Spann LLC solely for the purpose of making that contribution, and Restore Our Future has since amended its public reports to make clear that Conrad, not W

Spann LLC, was the true donor. See id. ¶ 32; Pls.' Opp'n at 40 n.21; see also Matter Under Review 6485, First General Counsel's Report at 5 (Aug. 28, 2012). Because the contribution at issue has already been publicly reported pursuant to the Act, it is not clear what additional information plaintiffs seek. It is true, as plaintiffs observe, that W Spann LLC has not itself filed reports as a political committee—as it would be required to do under plaintiffs' reading of the law. But, if filed, such reports would only reveal the same $1 million contribution that has already been reported elsewhere. Plaintiffs lack standing to seek such "duplicative reporting" of "the same information from a different source." Wertheimer, 268 F.3d at 1075.

Plaintiffs' last administrative complaint runs into similar difficulties. There, they alleged that Prakazrel Michel had improperly used an entity called SPM Holdings LLC as a "straw donor" for two contributions, totaling $875,000, to the super PAC Black Men Vote. See Compl. ¶¶ 45–49. According to the General Counsel's report, which is publicly available online, Michel "readily acknowledged his ownership of SPM," which he used to manage his personal and business affairs, and "explained that he [had] directed his LLC to make the contributions." Matter Under Review 6930, First General Counsel's Report at 3, 9 (Nov. 19, 2015); see also id. at 11 ("[T]he public record already indicates that Michel owns SPM, obviating the need for the Commission to expend further resources to resolve that fact."); see generally CREW (2007), 475 F.3d at 339 (taking note of information publicly available on the Commission's website); CREW (2011), 799 F. Supp. 2d at 88 (taking note of undisputed facts available online in General Counsel reports). Plaintiffs do not contend that SPM Holdings must register and file reports as a political committee, see Compl. ¶ 68, so the Commission's dismissal has not deprived them of the information that would normally be obtained by that route. Instead, it seems that plaintiffs seek only to reclassify the contributions publicly reported as being from SPM Holdings as contributions from Michel himself. Thus,

8

plaintiffs "do not really seek additional facts but only the legal determination" that Michel was the true donor. Wertheimer, 268 F.3d at 1075. Their failure to obtain that legal determination is not an informational injury. See, e.g., CREW (2011), 799 F. Supp. 2d at 89; see also CREW v. FEC, Civil Case No. 16-1088 (RJL), 2017 WL 432675, at *3 (D.D.C. Jan. 30, 2017) (no standing to seek reclassification of contributions in the name of employees as contributions in the name of their employer pursuant to § 30122).

However, plaintiffs have incurred informational injuries in connection with their three remaining administrative complaints. Two of those complaints relate to $1 million contributions made to the super PAC Restore Our Future in the names of F8 LLC and Eli Publishing LC. See Compl. ¶ 35. Because both corporate entities were linked to Steven J. Lund, both contributions were made on the same day, and local media had reported a connection between Lund and the contribution by Eli Publishing, the General Counsel found reason to believe that the contributions were "in fact engineered and made" in part by Lund. Matters Under Review 6487 & 6488, First General Counsel's Report at 3 (June 6, 2012); see also id. 10–12. But the General Counsel left open the possibility that, as plaintiffs had alleged, "other unknown respondents" had also played a role in funding the contributions, id. at 3, and proposed an investigation to determine whether that was indeed the case, id. at 16.

The General Counsel's treatment of plaintiffs' other remaining administrative complaint was similar. There, plaintiffs had alleged that Richard Stephenson and others had made more than $12 million in contributions to the super PAC Freedom Works for America in the name of two straw donors, Specialty Investment Group, Inc. and its subsidiary, Kingston Pike Development, LLC. See Compl. ¶¶ 40–41; Matter Under Review 6711, First General Counsel's Report at 2 (June 6, 2014). Here again, media reports had linked Stephenson to the contributions. See Matter Under

Review 6711, First General Counsel's Report at 14 & n.48. But the General Counsel did not deem those reports to be conclusive proof that Stephenson, and only Stephenson, had been behind the contributions to Freedom Works. Instead, it proposed an investigation to determine whether Specialty Investment Group and Kingston Pike Development were "the true sources of the contributions reported in their names and, if not, to identify the true source." Id. at 19.

From the publicly available portions of the administrative record cited in plaintiffs' opposition, it is clear that the Commission's General Counsel did not believe it knew the entire story about the contributions identified in these three administrative complaints. If the General Counsel did not know the whole story then, there is little reason to believe that plaintiffs know it now. Under the Act, plaintiffs have "a right to truthful information regarding campaign contributions and expenditures." Alliance for Democracy, 362 F. Supp. 2d at 144 (internal quotation marks omitted). In particular, plaintiffs contend that a proper interpretation of the Act required that F8, Eli Publishing, Specialty Investment Group, and Kingston Pike Development register as political committees and file public reports. See Compl. ¶¶ 62, 65 (citing 52 U.S.C. §§ 30102, 30103, 30104). It was the absence of these same reports that caused plaintiffs' informational injury in Akins. See Akins, 524 U.S. at 16; 52 U.S.C. § 30104(a)(11)(B) (Commission shall make reports "accessible to the public on the Internet"). Thus, plaintiffs have "espouse[d] a view of the law" under which entities regulated by the Commission are "obligated to disclose certain information" that plaintiffs have not received but have a right to obtain. See Am. Soc. for the Prevention of Cruelty to Animals, 659 F.3d at 23; see also Kean for Congress Comm. v. FEC, 398 F. Supp. 2d 26, 34–35 (D.D.C. 2005) (plaintiff organization had standing when it based its claim for information on the same provisions relied upon in Akins).

And there is "no reason to doubt" plaintiffs' claim that the information included in those reports would help plaintiffs and others to whom they would communicate it. Akins, 524 U.S. at 21; see also Friends of Animals I, 824 F.3d at 1040–41; Kean for Congress, 398 F. Supp. 2d at 34–35. Indeed, plaintiffs are engaged in a number of campaign-finance related activities— including public education, litigation, administrative proceedings, and legislative reform efforts— where the sought-after information would likely prove useful. "Given [plaintiffs'] goals and organizational activities, there is no reason to doubt" that plaintiffs suffered an injury in fact when they were denied information concerning the contributions identified in these three administrative complaints. Friends of Animals I, 824 F.3d at 1041.

The Commission makes two attempts to resist this conclusion. Neither is successful. First, the Commission argues that plaintiffs have failed to "allege a direct and adverse effect on specific programmatic concerns from the challenged dismissals to meet Article III's injury requirement." Def.'s Mot. to Dismiss at 19. Defendants have correctly identified the requirements for "organizational standing," which can be invoked by alleging a "concrete and demonstrable injury to [an] organization's activities"—with the consequent drain on the organization's resources—so long as that injury "constitutes far more than simply a setback to the organization's abstract social interests." PETA v. Dep't of Agric., 797 F.3d 1087, 1093 (D.C. Cir. 2015) (brackets original; internal quotation mark omitted) (quoting Havens Realty Corp. v. Coleman, 455 U.S. 363, 379 (1982)). But plaintiffs need not tread that path here. They have already established their informational standing by alleging that they were deprived of information to which they are entitled by statute, and demonstrating that there is no reason to doubt their claims that the information would be helpful to them. They need not satisfy Havens' requirements for organizational standing as well. See Friends of Animals I, 824 F.3d at 1040–41 (finding

11

informational standing for an organization without applying Havens); Friends of Animals II, 828 F.3d at 994 (criticizing a Sixth Circuit opinion for its "conflation of informational and organizational standing"); Am. Soc. for the Prevention of Cruelty to Animals, 659 F.3d at 19, 22–27 (separately analyzing organization's claims to informational and organizational standing as alternative theories). Relatedly, the Commission faults plaintiffs for failing to specify a "particular litigation, scheduled testimony, or current or looming outreach activity" in which they would use the information they seek. Def.'s Mot. to Dismiss at 20. But that is not plaintiffs' burden. The relevant question "is simply whether 'there is no reason to doubt'" plaintiffs' asserted justification for seeking the information. Kean for Congress, 398 F. Supp. 2d at 35 (quoting Akins, 524 U.S. at 21). At this stage, there is none.

Second, the Commission argues that under the Act's judicial review provision, 52 U.S.C. § 30109(a)(8), standing exists only for voters or other participants in political elections who are seeking information useful in electoral voting. See Def.'s Reply [ECF No. 19] at 1–2. But this argument conflates two issues. The first issue is whether plaintiffs, who are not voters or participants in political elections, may invoke the cause of action created by § 30109(a)(8)(A), which allows "[a]ny party aggrieved by an order of the Commission" to file a petition in this Court. The second issue is whether plaintiffs have suffered an injury in fact sufficient to support Article III standing. As the Supreme Court has recently made clear, the two issues are distinct—and the former does not affect the Court's subject-matter jurisdiction. See Lexmark Int'l, Inc. v. Static Control Components, Inc., 134 S. Ct. 1377, 1387–88 & n.4 (2014); see also Akins, 524 U.S. at 19–22 (differentiating between "prudential" and Article III standing); Common Cause, 108 F.3d at 419 (Section 30109(a)(8)(A) "does not confer standing; it confers a right to sue upon parties who otherwise already have standing"). The Commission may wish to argue that Congress has

not authorized plaintiffs to invoke the Act's cause of action. But because that issue is non-jurisdictional, it has not been properly presented in this Rule 12(b)(1) motion to dismiss.

Nor can the Commission undermine plaintiffs' standing by claiming that the information they seek is not "useful in voting." Under D.C. Circuit precedent, a plaintiff alleging an informational injury must demonstrate only that "there 'is no reason to doubt their claim that the information would help them.'" Ethyl Corp., 306 F.3d at 1148 (quoting Akins, 524 U.S. at 21). No doubt a voter can satisfy this standard by seeking information that is useful in voting, as plaintiffs did in Akins itself. See Akins, 524 U.S. at 21. But that does not mean that all other proffered uses are legally insufficient. Like the plaintiffs in Friends of Animals I, plaintiffs here have proposed valid uses, related to their organizational missions, for the information that they seek. See Friends of Animals I, 824 F.3d at 1041. The Commission has not explained why this Court should demand a more specific showing from plaintiffs under this Act, which is built around extensive disclosure requirements, than the D.C. Circuit has required under the Endangered Species Act, where the reporting requirements are merely "secondary." See Am. Soc. for the Prevention of Cruelty to Animals, 659 F.3d at 90.

For the reasons explained above, plaintiffs have adequately alleged informational injuries in connection with the contributions identified in Counts II and III of their complaint. Plaintiffs have further alleged that those injuries are traceable to the Commission's decision to dismiss their administrative complaints without requiring any of the alleged straw donors to register as political committees. See Compl. ¶¶ 6, 63, 66. And, finally, they assert that their injuries are likely to be redressed by a favorable judicial decision. See Pls.' Opp'n at 45; see also Akins, 524 U.S. at 25 ("If a reviewing court agrees that the agency misinterpreted the law, it will set aside the agency's action and remand the case—even though the agency (like a new jury after a mistrial) might later,

in the exercise of lawful discretion, reach the same result for a different reason."). The Commission, which says next to nothing on causation and redressability, offers no reason for the Court to question plaintiffs' standing on those grounds. Hence, plaintiffs have Article III standing to pursue Counts II and III of their complaint.

## CONCLUSION

For the reasons explained above, the Commission's motion to dismiss for lack of jurisdiction will be granted in part and denied in part. The Commission's motion to defer transmission of the administrative record pending resolution of its motion to dismiss will be denied as moot. A separate Order consistent with this Memorandum Opinion has issued on this date.

/s/
JOHN D. BATES
United States District Judge

Dated: March 29, 2017